# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TERRY KOVAC, | ) | CASE NO. 5:12-CV-01467 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| SUPERIOR DAIRY, INC., | ) | ORDER |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is what was originally brought solely as a motion to dismiss by defendant Superior Dairy, Inc. ("defendant" or "Superior") pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 4.) Plaintiff Terry Kovac ("plaintiff" or "Kovac") has filed a memorandum in opposition (ECF No. 7), and Superior has filed a reply (ECF No. 8). In order to dispose of an issue raised in the briefing regarding whether plaintiff's claims are subject to mandatory arbitration, the Court converted the motion to dismiss on that particular issue into a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Accordingly, the Court invited the parties to file supplemental briefing on the arbitration issue, and the parties did so. (ECF Nos. 10–12.) The parties also filed a joint stipulation pertaining to the arbitration issue. (ECF No. 9.) The matter is ripe for determination. For the reasons that follow, defendant's motion for summary judgment is **DENIED**, and defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

# I. BACKGROUND

The following background information is alleged by Kovac. At some time prior to the events underlying this case, Kovac was in an accident that left one of his legs "severely mangled." (ECF No. 1–3 at ¶ 4.) On June 12, 2006, Superior hired Kovac through the Bureau of Vocational Rehabilitation as a "lot trailer transporter," which entailed driving a "Yard Tractor." (ECF No. 1–3 at ¶ 6; ECF No. 4–2 at 46.)[1] On April 27, 2007, Kovac submitted permanent job and time restrictions, determined by a physician, to Superior. (ECF No. 1–3 at ¶ 7; ECF No. 4–2 at 46.) Pursuant to these restrictions, Superior and Kovac jointly determined that Kovac could perform all but two of Superior's third-shift positions: "line lift operator" and "leak check." (ECF No. 1–3 at ¶¶ 8–9.)

Kovac worked under these restrictions until September 2009, when Superior underwent a change of management. (ECF No. 1–3 at ¶ 10.) Soon after, Superior scheduled Kovac to work outside his permanent time restrictions. (ECF No. 1–3 at ¶ 11.) Kovac notified Superior, and the issue was resolved. (ECF No. 4–2 at 47.) In November 2009, Kovac was "forced" by Superior to take twelve weeks of sick leave in order to be examined by a doctor that Superior hired to re-examine Kovac's restrictions and medication. (ECF No. 1–3 at ¶ 13.) Kovac was required to provide all of his personal medical records to Superior as part of this evaluation. (ECF No. 1–3 at ¶ 14.)

The examining physician upheld Kovac's restrictions, and Kovac returned to work at Superior on March 1, 2010. (ECF No. 1–3 at ¶¶ 15–16.) Upon his return, however, Kovac was assigned the position of line lift operator, one of the two positions outside his job

---

[1] References to specific pages in the record are made to the continuous pagination applied by the electronic docketing system.

restrictions. (ECF No. 1–3 at ¶ 16.) He informed his supervisor, but was threatened with termination if he did not perform the job. (ECF No. 4–2 at 47.) Subsequently, Kovac worked as a line lift operator for several days, experiencing "severe issues with his leg," at which point he was moved to a position within his restrictions. (ECF No. 1–3 at ¶ 17.)

On December 14, 2010, Superior once again assigned Kovac to a job outside his job restrictions, the leak check position, this time on a permanent basis. (ECF No. 4–2 at 47.) At the time, Kovac was senior to all but one member of the third shift, and there were three other jobs on the shift that Kovac could have performed pursuant to his medical restrictions. (ECF No. 4–2 at 47.) Upon informing Superior that he would need to consult with his doctor before performing a job outside of his restrictions, Kovac was sent home. (ECF No. 4–2 at 47.) On December 16, 2010, Kovac filed a grievance with his union under Article IX of the union's collective bargaining agreement (the "CBA"), seeking reinstatement to the "loader" position until his doctor could review his ability to perform the leak check position. (ECF No. 9 at 167, 171.) That same day, Superior terminated Kovac for "insubordination" for refusing to work the leak check position. (ECF No. 4–2 at 47.) On December 17, 2010, Kovac filed a second grievance with the union, this time alleging "discharge without just cause." (ECF No. 9 at 172.) The union decided not to pursue either of Kovac's grievances to arbitration under Article X of the CBA. (ECF No. 9 at 167.)

On April 11, 2011, Kovac filed a dual charge with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), asserting disability discrimination and retaliation. (ECF No. 4–2 at 46.) The OCRC investigated Kovac's allegations, ruling in a letter of determination issued September 29, 2011, that there was

no probable cause to believe Superior had discriminated against Kovac and recommending that the matter be dismissed. (ECF No. 4–2 at 53.) Kovac applied for reconsideration of the OCRC's decision, and on January 12, 2012, the OCRC upheld its determination of no probable cause and ordered dismissal, finding that Kovac was indeed fired for insubordination, which was "a legitimate, non-discriminatory" ground for termination. (ECF No. 4–2 at 53.) Kovac exercised his right to request review of the OCRC's findings from the EEOC, and the EEOC adopted the OCRC's findings, sending Kovac a notice of dismissal and right-to-sue letter on February 24, 2012. (ECF No. 4–2 at 59.)

On May 29, 2012, Kovac brought the present action in the Stark County Court of Common Pleas, alleging disability discrimination by Superior in violation of the Americans with Disabilities Act ("ADA") and Ohio Rev. Code § 4112.02, as well as intentional infliction of emotional distress. (ECF No. 1–3 Ex. B.) On June 11, 2012, Superior removed the action to this Court (ECF No. 1 at 1) pursuant to 28 U.S.C. §§ 1331 and 1441 and filed the subject motion to dismiss Kovac's complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 4 at 20).

## II. STANDARD AND SCOPE OF REVIEW

### A. Documents outside the Pleadings

Superior makes four separate arguments in its dispositive motion: (1) Kovac's federal discrimination claim is time-barred; (2) Kovac failed to timely appeal his adverse OCRC determination; (3) Kovac's negligent and/or intentional infliction of emotional distress claim fails to state a claim for which relief can be granted;[2] and (4) Kovac consented to arbitration of all his claims.

---

[2] In the introduction preceding Superior's memorandum in support of its motion, Superior makes the additional broad assertion that all of Kovac's claims fail to state a claim upon which relief may be granted, but only goes on to argue failure to state a claim with respect to Kovac's negligent and/or emotional distress claim.

4

In briefing this motion, defendant has included exhibits, and both parties have submitted affidavits. Ordinarily, such "[m]atters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)), and a court that considers such matters must first convert the motion to dismiss to one for summary judgment, Fed. R. Civ. P. 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). EEOC charges and related documents, including right to sue letters, are public records of which the Court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment. *Williams v. Steak 'N Shake*, No. 5:11CV833, 2011 WL 3627165, at *3 (N.D. Ohio Aug. 17, 2011). OCRC records are similarly public records that may be judicially noticed. *Bass v. Wendy's of Downtown, Inc.*, No. 11-CV-940, 2012 WL 1552264, at *2 n.1 (N.D. Ohio May 1, 2012); *Felix v. Dow Chem. Co.*, No. 2:07-CV-971, 2008 WL 207857, at *2 (S.D. Ohio Jan. 23, 2008).

Exhibits A–D of Superior's motion to dismiss consist of OCRC and EEOC documents that are part of the public record. Accordingly, the Court may consider these exhibits without converting the motion to dismiss to a motion for summary judgment.

In contrast, Kovac's affidavit, attached to his opposition to Superior's motion to dismiss, may not be considered by the court in ruling on a 12(b)(6) motion. Because the affidavit

is not essential to the Court's ruling on defendant's motion, the Court will not consider it. Likewise, the Court will not consider the affidavit from Superior's Human Resources Manager attached to Superior's motion.[3]

Similarly, Exhibit E, the CBA between Superior and its employees' union, is not public record and is not mentioned in Kovac's complaint. As a result, for the Court to consider the CBA, it must convert the motion to dismiss into a motion for summary judgment. However, the CBA is only relevant to one of the four arguments raised in defendant's motion: that Kovac consented to arbitration of all his claims. The Court can rule on the other three arguments—that Kovac's federal discrimination claim is time-barred, that Kovac failed to timely appeal his adverse OCRC determination, and that Kovac's negligent and/or intentional infliction of emotional distress claim fails to state a claim—without referencing the CBA. For that reason, the Court only converts defendant's motion to dismiss to a motion for summary judgment on the arbitration issue and only considers Exhibit E, the CBA, for the same. The parties were given notice of the conversion and filed supplemental briefing on only that issue.

## B.  Motion for Summary Judgment

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court

---

[3] It is unclear whether Exhibits A–E are exhibits to Superior's motion or to the affidavit attached to the motion. Regardless, the Court's decision not to consider the affidavit from Superior's Human Resources Manager is completely independent of the Court's handling of the exhibits.

must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

The party opposing the motion may not rely merely on allegations or denials in its own pleading; rather, by affidavits or materials in the record, they must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of an essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mere conclusory allegations "are not evidence and are not adequate to support a motion for summary judgment." *Miller v. Aladdin Temp-Rite, LLC*, 72 F. App'x 378, 380 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been

established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.* In ruling on a motion for summary judgment, the court may not take into account credibility, the weight of the evidence, or the drawing of inferences from the facts. *Anderson*, 477 U.S. at 255. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* Evaluated thusly, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper. *Id.* at 248.

Defendant's argument that plaintiff agreed to arbitrate his claims is effectively a motion to compel arbitration. "In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment." *Rupert v. Macy's, Inc.*, No. 1:09CV2763, 2010 WL 2232305, at *3 (N.D. Ohio June 2, 2010) (quoting *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003)); *see also Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (stating that "[i]n order to show that the validity of [an arbitration agreement] is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," a showing that mirrors the summary judgment standard); *Arnold v. Rent-a-Center, Inc.*, Civil Action No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky May 12, 2011) (treating a motion to compel arbitration "as one for summary judgment under Fed. R. Civ. Pro. 56(c)"); *Lyman v. Greater Boston Radio, Inc.*, No. 09-14502, 2010 WL 255731, at *3 (June 21, 2010) (same).

C. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556 n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

### III. LAW AND ANALYSIS

### A.  Kovac's Federal and State Discrimination Claims Are Not Arbitrable under the Collective Bargaining Agreement

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq*., manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when

one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3, 4). In cases where all claims are referred to arbitration, however, the litigation may be dismissed rather than merely stayed. *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009).

The Sixth Circuit applies a four-pronged test to determine whether to grant motions to dismiss or stay the proceedings and compel arbitration:

(1) The Court must determine whether the parties agreed to arbitrate;
(2) The Court must determine the scope of that agreement;
(3) If federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and
(4) If the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Article X of the CBA, entitled "Arbitration," calls for binding arbitration of any "grievance, controversy or dispute" that remains unsettled after the grievance procedure, also detailed in the CBA, is exhausted. (ECF No. 4–2 at 73.) Section 1 of Article IX, entitled "Grievances," defines a "grievance" as "any controversy or dispute arising between the parties to this Agreement, as to the interpretation or application of the terms and provisions of this Agreement." (ECF No. 4–2 at 72.) Section 2 of Article IX begins:

Thus, should such differences or disputes of any kind arise between the parties to this Agreement or between the employees covered herein and the Employer, the aggrieved party to this Agreement or employee or employees, as the case may be, shall use the following [grievance] procedure as the sole means of settling said difference, dispute or controversy in the following manner.

(ECF No. 4-2 at 72–73.)

10

Citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), defendant argues that the aforementioned language in the CBA "clearly and unmistakably" requires Kovac to arbitrate his ADA claim. Kovac attempts to distinguish *Pyett* in arguing that the CBA is not clear and unmistakable.

The proper starting point for analysis of this issue, however, is not *Pyett*, but *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998).[4] It was in *Wright* that the Court first pronounced that a union-negotiated waiver of employees' statutory right to a judicial forum for claims of statutory employment discrimination must be "clear and unmistakable." *Id.* at 81. Applying that standard, the Court held that a provision providing for arbitration of "[m]atters under dispute" was not "clear and unmistakable." *Id.* at 80 (alteration in original.) The Court faulted the clause, which it took to mean "matters in dispute under the contract," for being "very general." *Id.* Moreover, the Court explained that "the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements," adding, "[i]ndeed, it does not even contain . . . its own specific antidiscrimination provision." *Id.*[5] *Wright* thus announced that "workers' statutory claims for employment discrimination are 'not subject to a presumption of arbitrability.'" *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999) (quoting *Wright*, 525 U.S. at 79).

---

[4] As plaintiff points out, the Court in *Pyett* did not even address whether the arbitration provision in the governing CBA was "clear and unmistakable," because the party opposing arbitration had already acknowledged on appeal that it was. *Pyett*, 556 U.S. at 272. In doing so, it forfeited the right to raise the issue before the Supreme Court. *Id.* at 273. Instead, *Pyett* stands for the rule that an arbitration provision in a CBA that clearly and unmistakably requires union members to arbitrate statutory discrimination claims is enforceable as a matter of law. *Id.* at 274.

[5] In contrast, the CBA in *Pyett* contained a specific antidiscrimination provision, explicitly referenced arbitration of discrimination claims, and provided a list of federal antidiscrimination laws, claims under which would be arbitrated. *Pyett*, 556 U.S. at 252.

Sixth Circuit case law shows that the "clear and unmistakable" standard is not easily met. In *Bratten*, the court noted that "post-*Wright* courts appear to be in agreement that a statute must specifically be mentioned in a CBA for it to even approach *Wright*'s 'clear and unmistakable' standard." 185 F.3d at 631 (collecting cases).[6] Because the CBA at issue in *Bratten* "[a]t best . . . obligate[d] defendants to refrain from disability discrimination . . . only within the context of Title VII," the employer could not compel arbitration of discrimination claims brought under the ADA. *Id.* Similarly, in *Kennedy v. Superior Printing Co.*, the Sixth Circuit held that "[t]here can be no dispute" that an agreement containing a "general anti-discrimination provision" and defining a "grievance" as "any controversy or dispute arising from the interpretation and/or application of the terms and work conditions under this labor agreement" did not compel employees to arbitrate federal statutory anti-discrimination claims. 215 F.3d 650, 654 (6th Cir. 2000).

With respect to Kovac's state law discrimination claim, Superior argues that "[t]he analysis is altogether different" because "no federally protected interest is at stake[,]" that the analysis must be made under Ohio law, and that Ohio law requires arbitration. (ECF No. 10 at 181–84.) In reality, the analysis under Ohio law is exactly the same, because Ohio courts have explicitly adopted *Wright*'s "clear and unmistakable" standard. *Smith v. Bd. of Trs. of Lakeland Cmty. Coll.*, 746 F. Supp.2d 877, 897 (N.D. Ohio 2010); *see also Minnick v. Middleburg Heights*, No. 81728, 2003 WL 22215612, at *5 (Ohio Ct. App. Sept. 25, 2003) (quoting *Wright*

---

[6] The Court finds it, frankly, incredible that neither party cited *Wright* or *Bratten* at any point in the briefing, particularly as the *Pyett* majority and dissent mention *Wright* by name a total of sixteen times (which, coincidentally, is also the same number of times *Bratten* mentions *Wright* by name). The Court reminds the parties that they have a duty to bring relevant authority to the attention of the Court. Additionally, the Court disapproves of the unprofessional tenor of some of the briefing submitted on behalf of the defendant and trusts that future filings with the Court will exhibit a more appropriate tone.

and adopting the *Wright* standard).[7] In a case involving a claim brought under Ohio Rev. Code § 4112.02, an Ohio appellate court held that a CBA containing a general nondiscrimination provision and an arbitration provision for "any complaint, controversy, or dispute between the [employer] and . . . employee" was not a clear and unmistakable waiver. *Haynes v. Ohio Turnpike Comm'n*, 893 N.E.2d 850, 853 (Ohio Ct. App. 2008).

Defendant asks the Court to recognize "the unusual sweep of the grievance and arbitration language" in the CBA; arguing, essentially, that use of broad, non-specific language evidences a "clear and unmistakable" agreement to arbitrate statutory employment discrimination claims. (ECF No. 10 at 170.) Defendant would turn the law completely on its head. It is exactly this sort of general arbitration provision, without any reference to specific antidiscrimination statutes, that the Court in *Wright* found failed to constitute a waiver of statutory discrimination claims. *See Wright*, 525 U.S. at 80 ("We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'") Here, the only reference to discrimination in the CBA is a general antidiscrimination provision, located far from the grievance and arbitration sections, proclaiming that "[t]he Union and the Company will continue their policies of nondiscrimination because of race, color, religion, sex, age, national origin or disability." (ECF No. 4–2 at 67.) The law is clear that such provisions do not constitute a waiver. *See Kennedy*, 215 F.3d at 655; *Bratten*, 185 F.3d at 631.

---

[7] Because the outcome is the same under both federal law and Ohio law, the Court declines to address whether, as a matter of federal law, the *Wright* standard applies to state law claims.

Because the CBA does not contain a "clear and unmistakable" waiver of employees' rights to pursue statutory nondiscrimination claims in a judicial forum, Superior's motion to compel arbitration lacks merit and is denied.[8]

## B. Kovac's Federal Discrimination Claim Is Not Barred By The Statute of Limitations

Title VII of the Civil Rights Act of 1964 states that, should the EEOC elect not to prosecute an employment discrimination charge, the EEOC "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . ." 42 U.S.C. § 2000e-5(f)(1). "[T]he ninety-day filing requirement of 42 U.S.C. § 2000e-5(f)(1) is *not* a jurisdictional requirement but, instead, is a timing requirement similar to a statute of limitations, subject to waiver, estoppel and equitable tolling." *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 646–47 (6th Cir. 1998).

"The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim, *see* Fed. R. Civ. P. 8(a)." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo*, 676 F.3d at 547. In those instances, dismissal of the claim under Rule 12(b)(6) is appropriate. *Id.*

---

[8] The Court's finding makes it unnecessary to examine plaintiff's alternative argument that the scope of the arbitration provision of the CBA is ambiguous. However, the Court notes that the parties again debated the issue without either side identifying the controlling legal standard: the Supreme Court's pronouncement that "ambiguities as to the scope of [an] arbitration clause itself" are to be "resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).

14

Superior argues in its motion that notice is given, and the ninety-day limitations period begins to run, at the very moment the EEOC places the right-to-sue letter to a claimant in the mail. (ECF No. 7 at 144.) However, the Sixth Circuit has explicitly ruled that, under § 2000e-5(f)(1), the limitations period begins running on the fifth day following the EEOC's mailing of a right-to-sue notice to a claimant's residential address of record, based upon a presumption of actual delivery and receipt by that time. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).

In a footnote, Superior also argues that, even with the five-day rule, Kovac's federal discrimination claim is untimely, citing LR 4.2(c), which allegedly establishes a presumption that mail will have reached an addressee "within four days." (ECF No. 4–1 at 31 n.7.) LR 4.2(c) deals with service of process, not the mailing of an EEOC right-to-sue notice. Moreover, a presumption that delivery occurs "within four days" operates identically to a rule whereby a statute of limitations began to run on the fifth day following mailing.[9]

Applying the Sixth Circuit's five-day rule, Kovac's federal discrimination claim was timely filed. The EEOC mailed its right-to-sue notice on February 24, 2012, and therefore the limitations period began to run five days later, on February 29, 2012. Kovac thus had ninety days from February 29, 2012 to file his claim, encompassing the period up to and including May

---

[9] In the event that Superior derived its argument from LR 4.2(c)'s instruction that an attorney requesting service by the Clerk's office endorse a summons with an answer date 24 days later than the date of mailing, it bears noting that, given the 21-day answer period provided by Fed. R. Civ. P. 12(a)(1)(A)(i), Superior should have asserted that mail is presumed delivered within *three* days. In that regard, the direction in LR 4.2(c) resembles Fed. R. Civ. P. 6(d)'s provision for allowing three additional days for a party to respond to certain methods of service, including mailing to a person's last known address. In *Graham-Humphreys*, the Sixth Circuit explicitly extended the delivery period provided by Rule 6(d) (formerly Rule 6(e)) by two additional days. 209 F.3d 552, 557 n.9 ("The Sixth Circuit allots two days for postal delivery of a RTS notice beyond the three day period allowed by Federal Rule of Civil Procedure 6(e).").

29, 2012. Because Kovac filed on May 29, 2012, his federal discrimination claim was timely.[10]
Accordingly, Superior's motion to dismiss Count One of Kovac's complaint as time barred is
denied.

**C. Kovac Is Not Barred From Asserting His State Law Discrimination Claim**

Superior also asserts that Kovac's state law discrimination claim, too, should be
dismissed as untimely. According to Superior, because Kovac failed to appeal the OCRC's
unfavorable January 12, 2012 decision on reconsideration, his claim under Ohio Rev. Code
§ 4112.02 is time-barred. (ECF No. 4–1 at 33–34.)

The Ohio Supreme Court has construed Chapter 4112 of the Ohio Revised Code
liberally, finding that an individual may file a separate, independent civil action after having
commenced a proceeding for disability discrimination with the OCRC, even in the event the
OCRC had responded unfavorably and the claimant abandoned the administrative appeal
process. *Smith v. Friendship Village of Dublin, Inc.*, 751 N.E.2d 1010, 1014 (Ohio 2001); *see
also Reid v. Plainsboro Partners, III*, (Ohio Ct. App. Sept. 16, 2010) (noting that, under
*Friendship Village*, the filing of an independent civil action under Ohio Rev. Code § 4112.99 is
distinct from seeking judicial review of an order of the OCRC and, thus, not subject to the thirty-

---

[10] Even if Kovac had filed after May 29, 2012, his federal discrimination claim could not be dismissed at this stage. Kovac did not include the date he received the EEOC's right-to-sue notice in his complaint, nor did he have to. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d at 547. In the event he filed more than 90 days after receiving the notice, Kovac could still argue for the limitations bar to be lifted under various doctrines, including waiver, estoppel, and equitable tolling. *Truitt*, 148 F.3d at 646–47. Superior did not argue against the application of any of these doctrines in its motion, and for good reason: there was nothing on the face of Kovac's complaint to suggest that it do so. This is precisely why Rule 12(b)(6) motions on statute of limitations grounds are restricted to instances where allegations on the face of the complaint affirmatively show a claim to be time-barred. *Cataldo*, 676 F.3d at 547.

day limit in Ohio Rev. Code § 4112.06(H)).[11] This is precisely what Kovac has done. As such,

the Court finds that Superior has failed to show that Kovac is barred from asserting his § 4112.02

claim, and Superior's motion to dismiss Count Two of Kovac's complaint is denied.

### D.  Kovac Has Failed To State a Claim for Intentional Infliction of Emotional Distress

Under Ohio law, the elements of a claim of intentional infliction of emotional

distress ("IIED")[12] are:

> (1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff;
> (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;
> (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and
> (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting

*Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997)). Conduct

giving rise to an IIED claim must be "so outrageous in character, and so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized community." *Long v. Ford Motor Co.*, 193 F. App'x 497, 503 (6th Cir. 2006)

---

[11] In contrast, if Kovac were alleging age discrimination, his decision to file a charge with the OCRC would have foreclosed the bringing of a separate civil suit. Ohio Rev. Code § 4112.02(N); *Friendship Village*, 751 N.E.2d at 1014 ("[T]he [Ohio] General Assembly has specifically provided that individuals alleging age discrimination must choose between an administrative or judicial action.")

[12] Although Kovac's complaint only explicitly demarcates a claim for IIED, Kovac uses language that could be interpreted as also asserting claims for negligent and/or reckless infliction of emotional distress. (ECF No. 1–3 at 40–41.) Identifying this, Superior argues that Ohio law does not recognize a claim for negligent infliction of emotional distress in the employment setting (ECF No. 4 at 34), and Kovac concedes the point (ECF No. 7 at 148). Superior does not reference reckless infliction of emotional distress, nor does Kovac in defending his intentional infliction of emotional distress claim. However, "[u]nder Ohio law, reckless infliction of emotional distress is the same cause of action as intentional infliction of emotional distress." *Ward v. Cnty. of Cuyahoga*, 721 F. Supp. 677, 695 n.8 (N.D. Ohio 2010); *see also Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1083 (Ohio 1991). As a result, the Court proceeds under the understanding that Kovac asserts only *intentional* infliction of emotional distress.

(quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) (*overruled on other grounds*)). "[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993). "Serious" emotional distress must be "severe and debilitating." *Long*, 193 F. App'x at 503 (quoting *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983)).

Under Ohio law, an at-will employee may be terminated at any time for any lawful reason or for no reason at all. *Herrington v. DaimlerChrysler Corp*, 262 F. Supp. 2d 861, 864 (N.D. Ohio 2003) (citing *Mers. v. Dispatch Printing Co.*, 483 N.E.2d 150, 153 (Ohio 1985)). An employee's termination, "even if based upon discrimination, does not rise to the level of 'extreme and outrageous' conduct without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (applying Ohio law).

In Count Three of his complaint, Kovac alleges, in pertinent part:

41. . . . Defendant Superior Dairy acted . . . intentionally by subjecting Plaintiff Kovac to unwelcome discrimination on the basis of his disability.

42. Defendant's conduct towards Plaintiff Kovac was extreme and outrageous.

43. As a direct and proximate result of these breaches, Plaintiff Kovac suffered severe and debilitating emotional distress, mental anguish, lost wages and benefits, humiliation, loss of reputation, and other compensatory damages.

(ECF No. 1–3 at ¶¶ 41–43.)

In the instant matter, while Kovac may arguably have satisfied the requirements for pleading the third and fourth elements of an IIED claim in a "bare bones" fashion, Kovac has

not satisfactorily pleaded the first and second elements. With respect to the first element, Kovac has not pleaded that Superior intended to cause him emotional distress, nor that Superior knew or should have known that its conduct would result in serious emotional distress. With respect to the second element, Kovac has not supported his legal conclusion with factual allegations that might plausibly give rise to a finding that Superior's conduct was outrageous and extreme. *See Iqbal*, 556 U.S. at 679. Allowing Kovac's IIED claim to go forward as pled would substantiate the Sixth Circuit's well-reasoned fear that every discrimination claim will be accompanied by a corresponding IIED claim. *See Godfredson*, 173 F.3d at 376.

Because Kovac's complaint fails to state an IIED claim that is plausible on its face, Superior's motion to dismiss Count Three is granted.

## IV. CONCLUSION

For the foregoing reasons, Superior's motion for summary judgment (motion to compel arbitration) is **DENIED**, and Superior's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count Three of Kovac's complaint for intentional infliction of emotional distress is **DISMISSED**. This case shall proceed only as to Kovac's federal and state law discrimination claims (Counts One and Two).

**IT IS SO ORDERED**.

Dated: March 12, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**